## Commonwealth, ex rel., v. Milne

*John R. K. Scott,* for relator; *William A. Gray,* for defendant.

ROSEN, J., January 30, 1935.—On November 18, 1930, this court entered an order on the defendant to pay the sum of $17 per week for the support of the relator, his wife. The present proceeding is a petition to vacate this order of support on the ground that on July 17, 1934, the defendant obtained a divorce from the relator in the State of Massachusetts. The wife contends that this divorce decree is not entitled to full faith and credit, because there was no personal service upon her nor did she appear in said divorce proceedings, and the parties never had a matrimonial domicile in the State of Massachusetts.

The defendant offered in evidence certified copies of the decree nisi and the final decree entered by the Massachusetts court. These instruments did not show whether or not there was personal service upon the wife, nor whether she appeared in the divorce action. She testified that she never was served with any papers either in the State of Massachusetts or elsewhere; that she had no notice of the pendency of the divorce action, and that during that time she was not in the State of Massachusetts but was a resident of the City of Philadelphia in this State. The defendant did not produce any positive testimony to show personal service or appearance by the wife. We find as a fact that in the divorce proceedings instituted by the defendant in the State of Massachusetts there was no personal service upon the wife, and that she never submitted herself by any method whatsoever to the jurisdiction of said court. It follows that the Massachusetts court did not have jurisdiction over the person of the wife.

Prior to their marriage, in April 1928, both parties had been living with their parents in Philadelphia for many years, and after the marriage they continued

to live here, at first at the home of the parents of the defendant and then in a two-room apartment in the Mayfair House in Philadelphia. For a few months prior to January 1930, they had been separated. When they decided to live together again, instead of doing so in Philadelphia, they moved to Boston, Mass., where they resided at a hotel for about 3 weeks and then rented an apartment of three rooms and furnished it with the furniture brought from Philadelphia. The defendant was then employed by Atwater Kent Company in Philadelphia, and he was transferred to Boston by the same company. About Easter of 1930, the parties came to Philadelphia to visit defendant's parents. The defendant returned to Boston a few days thereafter without the wife, and the parties have not lived together since that time.

It thus appears that the parties did reside together in Boston, Mass. The wife, however, contends that this was merely a temporary arrangement. She testified that they went to Boston about January 1, 1930, temporarily, to escape a situation which had arisen in Philadelphia. The exact nature of the so-called "scandal" is not disclosed by the testimony. They took a lease on an apartment in Boston for 1 year and 6½ months. The lease contained a provision that it could be canceled by them on September 1, 1930. The wife contends that they made this arrangement for the reason that they did not know how long they would stay in Boston, their intention being to return to Philadelphia, and that the defendant told her that he would have himself transferred by Atwater Kent Company from Philadelphia to Boston.

The mother of the relator testified that the parties were separated for a few months before January 1, 1930; that they did not want to go back together in Philadelphia until the "scandal" blew over; that the moving to Boston was merely a temporary arrangement.

As against this testimony, the defendant himself testified that he went to Boston with the idea of staying; that he took the lease containing the proviso that it might be canceled at the end of 6 months because he did not know whether he was going to like the particular section of Boston in which the apartment was located; that after the separation, about Easter of 1930, he went back to Boston and continued to reside there until April 1934, at which time he came back to Philadelphia. He had started a company of his own and no longer worked for Atwater Kent, and he therefore came back to reside with his parents here in this city. The only other fact from which the intention of the parties in removing to Boston may be inferred is that the lease for the apartment in Boston describes the defendant as "Warren Milne of Philadelphia, Pa.".

From the above testimony, we find as a fact that in January 1930, the parties took up a residence in Boston, Mass., with the intention of residing there only temporarily until a certain situation which then existed in Philadelphia would remedy itself and they would then return to Philadelphia.

The defendant is undoubtedly entitled to have the order of support vacated if he obtained a divorce in another State: Commonwealth, ex rel., v. Parker, 59 Pa. Superior Ct. 74; provided the divorce is entitled to full faith and credit in this jurisdiction: Commonwealth, ex rel., v. Nolde, 105 Pa. Superior Ct. 334. The jurisdiction of the Massachusetts court in the divorce proceeding may be collaterally attacked: Thompson v. Whitman, 18 Wall. 457. Since there was no personal service upon the wife, the validity of the decree obtained by the defendant in the State of Massachusetts depends upon whether the parties ever had a matrimonial domicile in the said State: Atherton v. Atherton, 181 U. S. 155. The parties never resided in Massachusetts prior to January 1, 1930.

Their domicile prior to that time was in the City of Philadelphia in this State. In order to establish a domicile in Massachusetts, it was necessary for the defendant to show that the parties took up their residence in that State with the intention of permanently residing there, or at least with no present intention of removing therefrom. "The requisite animus is the present intention of permanent or indefinite residence in a given place or country, or, negatively expressed, the absence of any present intention of not residing there permanently or indefinitely. Domicile of origin must be presumed to continue until another sole domicile has been acquired by actual residence, coupled with the intention of abandoning the domicile of origin. This change must be animo et facto, and the burden of proof is on the party who asserts the change": Price v. Price, 156 Pa. 617, 626. The defendant has failed to meet the burden cast upon him to satisfy this court by a preponderance of the evidence that he established a residence in Massachusetts in January 1930 with domiciliary intent.

It follows, therefore, that the decree of divorce obtained by the defendant in Massachusetts on July 17, 1934, is not entitled to full faith and credit in this State, and the defendant's petition to vacate the order of support is therefore dismissed.